UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CAROLINA SOSA and DR. GRAY ORPHEE,

                        Plaintiffs,

           - against -

ROCKLAND COUNTY COMMUNITY
COLLEGE,

                      Defendant(s).
------------------------------------------------------------x

04 Civ. 8722 (CLB)

***Memorandum & Order***

Brieant, J.

       Before the Court for decision is Defendant's motion for summary judgment dismissing Plaintiff's claims, filed on November 24, 2004. (Doc. 22). Plaintiffs are professors at defendant Rockland Community College ("RCC"). They applied for promotion to the rank of Associate Professor in 2003-04, and were both denied promotion. Plaintiffs claim that they were not promoted on account of their national origin and color, in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. sec. 1981-a. The following facts are either undisputed or assumed to be true for purposes of these proceedings only.

*RCC's Promotion Process*

       RCC has adopted a Reappointment, Tenure and Promotion Policy, ("RTP") approved by the SUNY Rockland Board of Trustees and the Faculty Senate. The RTP states that three specific categories are to be used "in making decisions related to the granting of reappointment, tenure and promotion." These three categories are "Effectiveness", "Service" and "Mastery."

The RTP provides for a uniform review process. Candidates are evaluated first by a Divisional Reappointment, Tenure and Promotion Committee ("Divisional Committee"). (Plaintiffs were both professors in the Humanities Division). The Divisional Committee members use scoring sheets, referred to as rubrics, to quantify a candidate's performance using various criteria specified by the RTP. The RTP requires that each committee member review a portfolio submitted by the candidate, and then independently complete the rubric evaluation.

The committee members then discuss and reexamine the rubric evaluations, and reevaluate their rubric scores accordingly. The Chair is then to tabulate the final score for each element, which shall thereafter become finalized anonymous rubric scores. These scores are averaged so as to arrive at one final committee score for each candidate. In order to achieve a positive recommendation, the candidate must meet the minimum required score specified by the RTP in the categories of teaching Effectiveness, Mastery and Service, as well as the overall qualifying score.

Each recommendation is to be accompanied by a reasoned written rationale. Following the Divisional Committee review, the promotion submissions are reviewed by the Faculty Senate College RTP committee ("FSCRTPC"), which follows the same procedure as is set forth above. The FSCRTPC is then to forward its recommendation to the appropriate Vice President. The candidate may appeal an unfavorable recommendation to that Vice President, who shall forward all recommendations to the President of the College.

*Sosa Promotion Denials*

Plaintiff Sosa is a native born United States citizen of Mexican descent. She is a professor of Pluralism and Diversity in America at RCC. She began teaching at RCC in 1991. She was tenured in 1999, after suing Defendant for its allegedly discriminatory denial of that status. Plaintiff Sosa was denied promotion twice: first during the 2002-03 academic year, and then during the following academic year of 2003-04.

When her 2002-03 application was evaluated by the Humanities Divisional Committee, the Committee approved Sosa for promotion by a vote of 4-1. The Divisional Committee noted that her "strength while here at Rockland Community College has been her teaching", and that 82.5% of her students during the preceding three years had rated her outstanding or good as a teacher.

About five weeks after Sosa received Departmental support for her bid for promotion, the FSCRTPC unanimously voted not to recommend Plaintiff for promotion, by a vote of 9-0. In their report to the Vice President, the FSCRTPC stated that Sosa "did not meet the minimum qualifying scores for promotion in effectiveness and mastery." The FSCRTPC gave Sosa a score of 12 for Service; 18 for Mastery; and 21 for Effectiveness, for a total score of 51. It further explained in its report that Sosa "needs to address written comments in her evaluations that reflect negative perceptions of her availability to students and her ability to respond to their needs. For example, students' comments that classes were frequently cancelled could be remedied to a degree by arranging coverage." The FSCRTPC noted that Sosa's completion of

her doctoral degree would advance her scores as to mastery and scholarship, and encouraged her "to continue her participation in activities that provide service to the College and community."

Sosa submitted a timely appeal to the Vice President on May 10, 2003.[1]

On July 22, 2003, the Vice President denied the appeal and recommended to Sosa that she "develop a plan for [her] professional development." Sosa met with the Vice President on September 9, 2003. From the memoranda prepared by both, after their meeting, it appears that the Vice-President was concerned with negative student comments about Sosa's "attendance and cancelling classes." Sosa stated in the meeting, and again in a follow-up memorandum, that her absences were due to well documented emergencies involving her health and her disabled son. She also stated that these absences were not reported to students in advance because school officials were not reachable.

Sosa reapplied for promotion to the rank of Associate Professor on January 31, 2004. On March 2, the Divisional Committee voted 4-1 against the promotion. In its memorandum to the FSCRTPC, the Divisional Committee stated it "had no choice but to vote against promotion". It explained that "Professor Sosa's most recent student evaluation (68.0% Outstanding or above average) are the lowest recorded in five years." The Divisional Committee commented on the lack of new peer observation or supervisory reports, and stated that it was concerned "Ms. Sosa's

---

[1] She noted that she had applied for the position of Associate Professor, rather than Professor, as the FSRPTC decision stated.

office door is apparently always closed, telephone calls are not answered directly, and other contacts with students difficult."

Sosa objected to the Divisional Committee decision in a detailed memorandum that addressed each of the Committee's objections.

On May 7, 2004, the FSCRTPC reported to the Vice President that it too was not recommending Sosa for promotion. The FSCRTPC found that Sosa did not meet the minimum rubric score for Effectiveness, and therefore she was "ineligible for a positive recommendation for promotion by this committee." Sosa received a 23 in Effectiveness, one point shy of the required 24, although her other scores were high enough to meet the required minimums in Mastery (25 where the minimum was 20) and Service (20 where the minimum was 12.)

Sosa again appealed to the Vice President. After the Vice President declined to "overturn" the Committee decision, Sosa appealed to the President, who also declined to reverse the denial to promote.

*Orphee Promotion Denial*

Plaintiff Orphee is a native of Haiti. He is an assistant professor of Economics at RCC and he holds a Ph.D. in that subject. He began teaching at RCC in 1991, and was tenured in 1995. On October 1, 2003, plaintiff Orphee applied for promotion to the rank of Associate Professor.

On March 12, 2004, the Divisional Committee declined to recommend Orphee for promotion by a unanimous vote of 5-0. The Committee explained that Orphee's mastery of his material was not disputed, and that his degrees and publications "reflects on [RCC] in a most favorable manner." However, the Divisional Committee went on to explain that Orphee's promotion would be denied based on his Effectiveness and Service, which "represent sixty percent of the promotional process." The Committee went on to explain that:

> "Peer observations and student evaluations (49.2% Outstanding or above average) have consistently been worrisome. There were no positive supervisory reports included in the dossier. The service component, considering ten years of employment, indicated very limited service on significant committees. For example, no service of the Faculty Senate or any Retention, Tenure and Promotion Committee exists, even though invitations apparently were extended."

The Committee reported that four of the five members found Orphee deficient in Effectiveness and Service, and that therefore the Committee "had no choice but to not recommend promotion to Associate Professor." For some reason, the Divisional Committee took an up and down, Pro/Con vote on the recommendation, although the scores they had awarded were below the minimum in [two] categories, making this vote meaningless.

On May 7, 2004, the FSCRTPC also declined to recommend Orphee for promotion. The FSCRTPC gave him an overall Effectiveness score of 15, where 24 was the minimum. Therefore, the Divisional Committee reported, Orphee was ineligible for promotion. The Divisional Committee suggested that "participation in additional activities with dated supporting documentation in the area of teaching effectiveness and service would enhance his dossier and portfolio."

By letter dated November 10, 2004, the Vice President declined to reverse the decision of the two committees, stating his reasons. The President declined to overturn the committees' decisions as well.

**Discussion**

The College argues that it is entitled to summary judgment and that Plaintiffs' complaint should be dismissed, because "taking the facts in a light most favorable to the non-movant herein, i) Plaintiffs were not qualified for promotion as defined by the detailed relevant policy governing same; ii) Plaintiffs were not treated disparately as compared to those similarly situated; iii) Defendant's reasons for the employment action were legitimate and non-discriminatory," and neither Plaintiff can show pretext.

Defendant notes that the faculty members on the reviewing committees charged with evaluating candidates found that they did not meet the minimum scores in at least one of the three categories. "Consequently, the review committees could not recommend the promotion of either Plaintiff." The criteria that is used to score the rubrics is largely objective and requires input from a large number of peers as well as students.

Plaintiffs dispute the ultimate importance of the committees, and claim that the President holds the actual authority, and that "the self-governance construct is intended to direct attention away from the administrative decision-makers and toward faculty peers." There is no evidence submitted to support this rejection of a peer review method in wide use in colleges and

universities.  Neither Plaintiff claims intentional discrimination directed at them personally.  Both assert that the Defendant is guilty of 'institutional discrimination,' but during the course of discovery and depositions, both Plaintiffs testified that their allegations are not based on any specific racial animus or claims of animus by administrators at RCC."  Nor do Plaintiffs offer sufficient evidence that their promotional qualifications were superior to the promotion qualifications of any other faculty members who were granted promotion.

Plaintiffs have each failed to produce evidence of pretext, or that the highly organized methods of academic evaluation for promotion found in the College's established Reappointment, Tenure and Promotion Policy did not function impartially in their case, or that it had the effect of promoting "institutional discrimination." *See Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999).

The motion is granted.  The Clerk shall file a final judgment.

SO ORDERED.

Dated: White Plains, New York
       May 1, 2007

SO ORDERED.

Dated: White Plains, New York
      May 1, 2007

                                              _____
                                              Charles L. Brieant, U.S.D.J.